IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Donald Stevenson, | ) | |
| | ) | Civil Action No. 0:11-625-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Allstate Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On February 25, 2010, Donald Stevenson ("Plaintiff") filed an action in the Court of

Common Pleas for Fairfield County, South Carolina, against Allstate Insurance Company

("Defendant"). ECF No. 1-1. Plaintiff asserted claims for breach of contract and bad faith

refusal to pay, alleging that Defendant failed to pay for damage to his barn and shed as required

by an insurance policy. Defendant removed the action to this court and filed an answer on

March 15, 2011. ECF No. 1 & 4. Defendant filed a supplemental jurisdictional statement and an

amended answer on March 18, 2011. ECF No. 8 & 9. On November 18, 2011, Defendant filed

a motion for summary judgment. ECF No. 27. Plaintiff filed a response in opposition on

December 12, 2011. ECF No. 30. Defendant filed a reply on December 16, 2011. ECF No. 32.

**FACTS**

The following facts are construed in the light most favorable to Plaintiff to the extent

they are supported by evidence in the record. Plaintiff and Defendant entered into a "Deluxe

Homeowners Policy" insurance contract ("the Policy") in effect between November 1, 2007, and

November 1, 2008. ECF No. 27-2. Subject to various exclusions, Defendant agreed to cover

"sudden and accidental direct physical loss" to Plaintiff's dwelling and other structures located

on his property. *Id.* at 13. The Policy does not cover losses caused by "wear and tear, aging, marring, scratching, deterioration, . . . rust or other corrosion, mold, wet or dry rot, . . . settling, cracking, shrinking, . . . insects, rodents, birds or domestic animals." ECF No. 27-2 at 15.

On October 27, 2008, a wind storm caused damage to the large barn on Plaintiff's property and to the smaller shed behind the barn. *See, e.g.*, ECF No. 27-3 at 2. Plaintiff filed a claim under the Policy for this damage. *Id.* On December 2, 2008, Earl Hanna ("Hanna"), a claim representative employed by Defendant, went to Plaintiff's residence for a scheduled meeting concerning the claim. *Id.* Although the appointment was scheduled for noon, Hanna arrived just after sundown. ECF No. 30-2 at 8-9. Hanna inspected the two buildings and observed that the metal roof on each building had been damaged by the wind. ECF No. 27-3 at 3. When Hanna returned to Plaintiff's house to discuss the damage, Hanna asked Plaintiff to move out of the chair he was sitting in so that Hanna could sit down and show him pictures. ECF No. 30-2 at 9.

Hanna estimated the roof damage to be worth $1,094.20. ECF No. 27-3 at 3. Hanna wrote a check to Plaintiff for $844.20, reflecting a $250 reduction due to Plaintiff's deductible. *Id.* Plaintiff disagreed with this estimate and stated that the wind had caused structural damage to the buildings, causing them to lean. *Id.* However, Hanna believed that "the buildings had settled due to the[ir] age and condition," including "rot and insect damage to the foundation and supports of the buildings." *Id.* Hanna and Defendant agreed to hire an engineer to determine whether the buildings had suffered any storm-related structural damage. *Id.*

On December 5, 2008, Steven Morris ("Morris"), a certified structural engineer hired by Defendant, inspected the buildings on Plaintiff's property. *See* ECF No. 27-3. The barn was built in the 1930's and the smaller shed was built in the 1940's. ECF No. 27-5 at 17-18. Morris

found that the barn's leaning support columns, sloping floor framing, and variations in siding reflected "chronic long-term differential settlement." ECF No. 27-3 at 7. Morris also found evidence of vermin infestation in the barn, as well as damage to the barn's framing and siding caused by wood-destroying insects. *Id.* Morris observed wind damage to less than 50 square feet of the barn's roof. *Id.* Morris also observed that the shed had sustained damage to approximately 300 square feet of its roof. *Id.* at 8. Morris found that the shed's tin roofing material "exhibited signs of chronic long-term damage due to exposure to the elements," including rust, and that "the supporting wooden framing elements had deteriorated from exposure to the elements." *Id.* at 7.

Morris concluded that neither building had sustained wind damage to its wooden frame. ECF No. 27-3 at 8. Rather, Morris found that "[t]he observed damage to the wooden frame structures is the result of chronic long-term differential settlement, normal wear and tear and long-term exposure to the elements." *Id.* Morris stated that the wind had caused damage only to approximately 350 square feet of total roofing area. *Id.* at 7. Morris further opined that both structures were "at the end of their serviceable lives," and that "[i]f the roof covering and the structure[s] had been in good serviceable condition, no wind damage to the roof covering would be expected." *Id.* at 8. Based on Hanna's inspection and Morris's report, Hanna sent Plaintiff a letter on December 8, 2008, denying coverage for the structural damage to the two buildings. ECF No. 27-3 at 3.

On October 8, 2009, Plaintiff called Defendant and requested that Defendant reconsider its denial based on a contractor's estimate Plaintiff had obtained. ECF No. 27-3 at 3. Hanna spoke to the contractor on October 9, 2009, and the contractor agreed that only a small portion of the roofs had been damaged by wind. *Id.* Plaintiff spoke to one of Hanna's supervisors on

October 26, 2009, and stated that both roofs needed to be completely replaced. *Id.* Plaintiff again spoke to one of Hanna's supervisors on March 12, 2010, and stated that the structures of both buildings were twisted. *Id.*

On February 16, 2011, after retaining counsel, Plaintiff forwarded to Defendant a letter written by Douglas Barnard ("Barnard") of Abel Building Systems. ECF No. 27-3 at 4; ECF No. 27-5 at 30. Barnard is a licensed commercial contractor who has 48 years of experience in the construction business. ECF No. 27-7 at 3; ECF No. 30-1 at 11. He is not an engineer, and has no degrees or licensing in structural engineering. ECF No. 27-7 at 4 & 12. The letter stated that it was regarding "wind damage," and that "[r]epairs to the three structures we toured on your farm are as follows: (1. Hay Barn $57,968.00; (2. Metal building behind the hay barn $10,889.00; (3. Garage building closest to house $12,338.00." ECF No. 27-5 at 30. The letter further stated that "[t]hese figures reflect steel prices as of 01/17/11." *Id.*

In his deposition, Barnard stated that sagging in the barn was caused by natural settling rather than wind. ECF No. 27-7 at 9-11. However, Barnard stated that the wind had damaged the barn's roof, and that "[t]here was steel missing that had been blown off, and the roof itself is racked." ECF No. 30-1 at 2-3. He opined that the wind had twisted the barn's structure and that "the biggest problem with that barn is getting that roof racked back." *Id.* at 4 & 8. Barnard also stated that the shed "had been blown pretty good." *Id.* at 8. Barnard opined that the shed had not suffered any structural damage as a result of any wind storm. ECF No. 27-7 at 15.

Barnard testified that Plaintiff requested a quote to straighten out the barn because it had been twisted, and that he had also requested quotes to repair the shed and garage because they were all damaged at the same time. *Id.* at 5-8. Barnard testified that the approximately $58,000 quoted to repair the barn would include taking off the whole roof and the wooden siding,

removing all the rotten lumber, twisting the frame back into shape by pulling it with a crane, placing new supports under the supporting posts to prevent sinking, installing new wooden siding, and putting all new steel on the roof. *Id.* at 10-11 & 16-17. Barnard testified that the $10,889 quoted to repair the shed included "more or less" replacing the whole building, meaning that all of its metal and rotten wood would have to be replaced. *Id.* at 18. Barnard stated that he would have to replace all of the metal on the shed's roof, rather than only the damaged part, because the roof was made of an old type of tin that is now difficult to locate. *Id.* Barnard testified that the approximately $12,000 quoted to repair the garage also included replacing the entire metal roof and all rotten wood. *Id.* at 19. Barnard testified that he would use "[t]wenty-nine gauge corrugated, 40-year warranty" steel, "[t]he best [he] can buy." *Id.* at 20. He stated that this would be an upgrade that was at least twice as expensive as the tin roofing currently on Plaintiff's buildings. *Id.* at 20-21.

Plaintiff has not made any repairs to the barn or shed since 2008, or taken any temporary measures to prevent water from leaking through the damaged roofs. ECF No. 27-5 at 29.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The facts and any inferences drawn from the facts should be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving

party makes this showing, the opposing party must set forth specific facts showing there is a

genuine issue for trial. *Id.*

**DISCUSSION**

**A.      Breach of Contract**

Plaintiff's complaint alleges that Defendant breached the insurance contract by failing to

pay benefits due under the contract. In an action for breach of contract, a plaintiff must prove

the existence of a binding contract between the parties, a breach of the contract by the defendant,

and damages directly and proximately caused by this breach. *Fuller v. Eastern Fire & Cas. Ins.

Co.*, 124 S.E.2d 602, 610 (S.C. 1962).

Barnard testified that the wind had "racked" the barn's roof and twisted its structure. He

further testified that to straighten out the barn, he would have to remove the roof and siding and

replace both with new materials. He also testified that repairing the shed's wind-damaged roof

would require the installation of new roofing material and new wood to support the roof.

Finally, he provided the amount of money that would be required to repair these two buildings.

Defendant advances numerous arguments as to why neither building suffered structural wind

damage and why the suggested repairs are excessive. However, based on Barnard's testimony, a

reasonable juror could find that Defendant breached the insurance contract by providing

insufficient compensation to Plaintiff. Furthermore, a reasonable juror could determine the

damages resulting from this alleged breach to a reasonable degree of certainty. Accordingly,

because there is a genuine dispute as to material facts, summary judgment is denied as to

Plaintiff's breach of contract claim.

## B.    Bad Faith

Plaintiff's complaint alleges that "Defendant has failed to pay benefits that are clearly due to the Plaintiff arising from his property damage"; that "Defendant lacks just cause for its refusal to pay a reasonable amount of benefits to the Plaintiff"; and that "Defendant has provided no valid reason for its refusal to pay the benefits to Plaintiff."  ECF No. 1-1 at 9-10.

"[T]here is an implied covenant of good faith and fair dealing in every insurance contract that neither party will do anything to impair the other's rights to receive benefits under the contract." *Tadlock Painting Co. v. Maryland Cas. Co.*, 473 S.E.2d 52, 53 (S.C. 1996) (quotation omitted).  A policyholder may recover damages for bad faith denial of insurance coverage if he proves that there was "no reasonable basis to support the insurer's decision to deny benefits" under an insurance contract.  *Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996) (quotation omitted).  Additionally, "if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Tadlock*, 473 S.E.2d at 53 (quotation omitted).

In Plaintiff's response brief, he argues that he has created an issue of fact as to bad faith with the following evidence: Hanna arrived late for his appointment, and after dark, to view the damage to Plaintiff's buildings; after viewing the damage, Hanna wrote a check for $844.20 to cover the total damage; Hanna was "arrogant and indifferent"; and Hanna asked Plaintiff to get out of his chair so that Hanna could sit in it.  ECF No. 30 at 2.  Plaintiff's counsel also stated at oral argument that Defendant did not provide Plaintiff with a copy of Morris's report until after Plaintiff filed suit.

Based on the undisputed evidence in the record, no reasonable juror could find that Defendant had "no reasonable basis" to support its denial of coverage.  Even if Plaintiff is able to prove that Defendant breached the insurance contract by failing to pay for wind damage that should have been covered under the Policy, nothing in the record suggests that this was the result of anything other than a good-faith dispute about the extent of coverage.  Morris's report, in itself, provides a reasonable basis to deny Plaintiff's claims for extensive damage, and Plaintiff has not suggested that Morris's analysis was made in bad faith.  Any lack of good manners on the part of Defendant's adjuster is irrelevant in a claim for bad faith denial of coverage. Defendant is entitled to summary judgment on Plaintiff's bad faith claim.

## CONCLUSION

Defendant's motion for summary judgment is denied as to Plaintiff's breach of contract claim and granted as to Plaintiff's bad faith claim.

**IT IS ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina
June 4, 2012